IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:11-CV-28 |
| v. ) | (Judge Keeley) |
| ) | COMPLAINT |
| CONSOL ENERGY, INC., CONSOLIDATION ) | |
| COAL COMPANY, and WINDSOR COAL COMPANY ) | |
| ) | |
| Defendants. ) | |
| ) | |

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

**INTRODUCTION**

1. This is a civil action brought pursuant to Section 309(b) and (d) of the Federal Water Pollution Control Act ("Clean Water Act" or the "CWA"), 33 U.S.C. §§ 1319(b) and (d). Plaintiff alleges that Defendants discharged and will continue to discharge pollutants into waters of the United States in violation of Section 301 of the CWA, 33 U.S.C. § 1311. Plaintiff also alleges that Defendants are in violation of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued by West Virginia pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

2. Plaintiff seeks permanent injunctive relief and civil penalties against Defendants to halt their illegal discharges of pollutants into waters of the United States as authorized by Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), and under 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendants are located, reside, and/or are doing business, and/or in which the majority of the violations alleged in the Complaint occurred.

5. Notice of commencement of this action has been given to the State of West Virginia in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANTS

6. Consol Energy, Inc. ("Consol") is a Delaware corporation with its principal place of business at CNX Center, 1000 Consol Energy Drive, Canonsburg, Pennsylvania.

7. Consolidation Coal Company is a Delaware corporation with its principal place of business at CNX Center, 1000 Consol Energy Drive, Canonsburg, Pennsylvania.

8. Windsor Coal Company is a West Virginia corporation with its principal place of business at CNX Center, 1000 Consol Energy Drive, Canonsburg, Pennsylvania.

## STATUTORY AND REGULATORY REQUIREMENTS

9. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" to waters of the United States, except, *inter alia*, in compliance with an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit-issuing

authority may issue an NPDES permit that authorizes the discharge of any pollutant to waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines to be necessary to carry out the provisions of the CWA.

11. Section 402 of the CWA, 33 U.S.C. § 1342, directs the Administrator to prescribe conditions for NPDES permits to assure compliance with the requirements of the CWA, including conditions on data and information collection, reporting, and such other requirements as the Administrator deems appropriate.

12. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological, and other constituents which are discharged from point sources. Effluent limitations are among the conditions and limitations prescribed in NPDES permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

13. Section 303(d) of the CWA, 33 U.S.C. § 1313(d), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water. Section 301(b)(1)(C) of the CWA, 33 U.S.C. § 1311(b)(1)(C), provides that when technology-based effluent limits are insufficient to keep receiving waters within those levels, the permit must include stricter water quality based effluent limits that reflect water quality standards and criteria.

14. Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that EPA may authorize a state to implement and administer an approved NPDES program within the state. At all relevant times, the State of West Virginia has been authorized by EPA to administer an NPDES program for

regulating the discharges of pollutants to navigable waters within the state's jurisdiction. 47 Fed. Reg. 22363-01 (May 24, 1982). Pursuant to W.Va. Code §§ 22-1-5, 22-1-7, and 22-11-4, the West Virginia Department of Environmental Protection ("WVDEP"), through the Director of the Division of Water and Waste Management, is the state regulatory agency that administers the NPDES permit program in West Virginia.

15. The West Virginia water quality standards are set forth in West Virginia Code of State Rules Title 47, Series 2. West Virginia Code of State Rules Title 47, Series 2, Appendix E sets forth numeric water quality standards for various parameters based on water body use designation. The acute standard for chloride based on an aquatic life use designation is a one hour average concentration of 860 mg/l not to be exceeded more than once every three years on the average. The chronic standard for chloride based on an aquatic life use designation is a four-day average concentration of 230 mg/l, not to be exceeded more than once every three years on the average. W.Va. C.S.R. § 47-2 App. E.

16. West Virginia Code of State Rules Title 47, Series 2, Section 3 sets forth conditions not allowable in state waters. Section 3.2.i states that "no significant adverse impact to the chemical, physical, hydrologic, and biological components of the aquatic ecosystem shall be allowed." W.Va. C.S.R. § 47-2-3.2.i.

17. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

18. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who

violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

19. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, 69 Fed. Reg. 7121 (Feb. 13, 2004), and 74 Fed. Reg. 626 (Jan. 7, 2009), 40 C.F.R. § 19, EPA may seek civil penalties of up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009.

## GENERAL ALLEGATIONS

20. The Defendants named herein are "persons" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

21. At all relevant times, Consol managed, directed, or controlled environmental compliance at the facilities owned/operated by Consolidation Coal Company and Windsor Coal Company (collectively, "Subsidiaries").

22. At all relevant times, Consol and its Subsidiaries (collectively, "Defendants") did business in West Virginia.

23. Defendants own and/or operate coal mines and associated facilities, including wastewater treatment facilities. As part of their operations, Defendants generate wastewater that contains various "pollutants" as that term is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6), and 40 C.F.R. § 122.2, including chloride.

24. Consol's Subsidiaries obtained NPDES permits for discharges of their wastewater from WVDEP. The respective NPDES permits contain effluent limitations prohibiting discharges of

5

specified pollutants in excess of numeric monthly average, daily maximum, and/or daily minimum limits, and also incorporate by reference West Virginia's water quality standards.

25. <u>Blacksville No. 2</u>. On May 17, 2006, WVDEP re-issued NPDES Permit No. WV0064602 to Consolidation Coal Company for discharges related to the Blacksville No. 2 deep mine facilities. The permit included limits on the monthly average and daily maximum discharges of chloride from Outlet 003 beginning on June 27, 2007.

26. On April 7, 2008, WVDEP modified Permit No. WV0064602 to allow the Blacksville No. 2 mine wastewater treatment facility to discharge from Outlet 005. The effect of the modification was that the wastewater that was previously discharged from Outlet 003 could now be discharged from Outlet 005. The permit as modified did not include numeric limits for chloride for Outlet 005.

27. <u>Loveridge Deep Mine No. 22</u>. On May 16, 2005, WVDEP re-issued NPDES Permit No. WV0040711 to Consolidation Coal Company for discharges related to the Loveridge Deep Mine No. 22 facilities. The permit included limits on the monthly average and daily maximum discharges of chloride from Outlets 001, 007, and 016 beginning on June 27, 2007.

28. <u>Robinson Run Mine No. 95</u>. On May 31, 2005, WVDEP re-issued NPDES Permit No. WV0093505 to Consolidation Coal Company for discharges related to the Robinson Run Mine No. 95. The permit included limits on the monthly average and daily maximum discharges of chloride from Outlet 011 beginning on June 27, 2007.

29. <u>Four States Deep Mine Complex</u>. On May 26, 2006, WVDEP re-issued NPDES Permit No. WV0050598 to Consolidation Coal Company for discharges related to the Four States Deep Mine Complex and related facilities. The permit included immediately effective limits on the

Case 1:11-cv-00028-FPS   Document 2   Filed 03/14/11   Page 7 of 15   PageID #: 8

monthly average and daily maximum discharges of chloride from Outlet 002.

31. <u>Shoemaker Mine</u>. On January 10, 2006, WVDEP re-issued NPDES Permit No. WV0004201 to Consolidation Coal Company for discharges related to the Shoemaker Mine and related facilities. The permit included immediately effective limits on the monthly average and daily maximum discharges of chloride from Outlets 003 and 018.

31. <u>Huff Run Acid Mine Drainage ("AMD") Treatment Plant</u>. On February 16, 2006, WVDEP issued NPDES Permit No. WV1011456 to Windsor Coal Company for discharges related to the Huff Run AMD Plant. The permit included immediately effective limits on the monthly average and daily maximum discharges of chloride from Outlet 001.

32. On September 30, 2008, WVDEP issued an order modifying the permits and outlets identified in Paragraphs 25 and 27-31 above "suspending" effluent limits for chloride (the "Order"). Under the Order, interim chloride limits became effective on October 2, 2010 and final chloride limits become effective on September 6, 2013.

33. At all relevant times, Defendants have discharged pollutants from various impoundments and settlement ponds, outlets, ditches, and other conveyances subject to the NPDES permits identified in Paragraphs 25-31 that are "point sources" within the meaning of Section 502(14) of the Clean Water Act, 33 U.S.C. § 1362(14). These point sources have discharged pollutants into streams, rivers, and other waters of the United States, within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), and the federal regulations implementing the CWA at 40 C.F.R. § 122.2.

34. The receiving waters into which Defendants have discharged pollutants pursuant to the permitted outlets identified in Paragraphs 25-31 are identified by NPDES permit number and

7

outlet location in Appendix A to this Complaint. Each of these receiving waters is either a tributary or unnamed tributary that (a) is a perennial tributary to a traditional navigable water, or (b) flows into perennial tributaries to a traditional navigable water. *See* Appendix A.

35. All of the receiving waters into which the Defendants have discharged pollutants have a use designation for the propagation and maintenance of aquatic life in warmwater fisheries.

## CLAIM 1: VIOLATIONS OF CHLORIDE EFFLUENT LIMITATIONS

36. Paragraphs 1-35 are re-alleged and incorporated by reference.

37. As set forth in Appendix B to this Complaint, and further described below, Defendants have exceeded applicable NPDES permit limits for chloride discharges a total of least 470 times. This includes at least 291 violations of daily maximum limitations and at least 179 violations of monthly average limitations.

38. Blacksville No. 2 (NPDES Permit No. WV0064602). The May 17, 2006 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlet 003 beginning on June 27, 2007. As set forth in Appendix B, from June 27, 2007 through September 30, 2008, Consol and Consolidation Coal Company violated the daily maximum chloride effluent limitation for Outlet 003 at least 18 times, and the monthly average chloride effluent limitation at least 11 times.

39. Loveridge Deep Mine No. 22 (NPDES Permit No. WV0040711). The May 16, 2005 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlets 001, 007, and 016 beginning on June 27, 2007. As set forth in Appendix B, from June 27, 2007 through September 30, 2008, Consol and Consolidation Coal Company violated the daily maximum chloride effluent limitations for Outlets 001, 007, and

8

016 a total of at least 68 times, and the monthly average chloride effluent limitations a total of at least 40 times.

40. Robinson Run Mine No. 95 (NPDES Permit No. WV0093505). The May 31, 2005 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlet 011 beginning on June 27, 2007. As set forth in Appendix B, from June 27, 2007 through September 30, 2008, Consol and Consolidation Coal Company violated the monthly average chloride effluent limitations for Outlet 011 at least 5 times.

41. Four States Deep Mine Complex (NPDES Permit No. WV0050598). The May 26, 2006 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlet 002. As set forth in Appendix B, from May 26, 2006 through September 30, 2008, Consol and Consolidation Coal Company violated the daily maximum chloride effluent limitations for Outlet 002 at least 34 times, and the monthly average chloride effluent limitations at least 27 times.

42. Shoemaker Mine (NPDES Permit No. WV0004201). The January 10, 2006 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlets 003 and 018. As set forth in Appendix B, from January 10, 2006 through September 30, 2008, Consol and Consolidation Coal Company violated the daily maximum chloride effluent limitations for Outlets 003 and 018 a total of at least 111 times, and the monthly average chloride effluent limitations a total of at least 65 times.

43. Huff Run AMD Treatment Plant (NPDES Permit No. WV1011456). The February 16, 2006 permit set an average monthly limit for chloride discharges of 218 mg/l and a maximum daily limit for chloride discharges of 378 mg/l from Outlet 001. As set forth in Appendix B, from

February 16, 2006 through September 30, 2008, Consol and Windsor Coal Company violated the daily maximum chloride effluent limitations for Outlet 001 at least 60 times, and the monthly average chloride effluent limitations at least 31 times.

## CLAIM 2: VIOLATIONS OF WATER QUALITY STANDARDS

44. Paragraphs 1-35 are re-alleged and incorporated by reference.

45. At all times relevant to this claim, NPDES Permit Nos. WV0064602 and WV0040711 incorporated by reference West Virginia Code of State Rules § 47-30-5.1, which includes the requirement that "the discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the Department of Environmental Protection, Title 47, Series 2." Title 47, Series 2 of the West Virginia Code of State Rules includes the requirement that the discharge have "no significant adverse impact to the chemical, physical, hydrologic, and biological components of the aquatic ecosystem." 47 C.S.R. 2 § 3.2.i.

46. Consol and Consolidation Coal Company operate mining facilities associated with NPDES Permit Nos. WV0064602 (the "Blacksville No. 2 Permit") and WV0040711 (the "Loveridge Permit"). The discharges from Outlets 003 and 005 authorized by the Blacksville No. 2 Permit and from Outlet 016 authorized by the Loveridge Permit provide most of the constituent flow for the immediate receiving waters. These discharges are primarily a result of pumping the Blacksville No. 2 and Loveridge mine pools.

47. Loveridge Outlet 016 ("St. Leo") discharges into South Fork upstream of Blacksville No. 2 Outlet 005 ("Velone Pond"). Velone Pond discharges into West Virginia Fork, which discharges into Dunkard Creek.

48. At all times relevant to this claim, the Blacksville No. 2 and Loveridge Permits included the requirement that Consolidation Coal Company monitor in-stream chloride levels. The permits required that the in-stream monitoring be done at approximately the same time as the monitoring of the outlet discharge points.

49. Monitoring results reported by Consol demonstrate that from at least May 1, 2009 through November 30, 2009, significant amounts of chloride were discharged from St. Leo, causing in-stream levels to rise well above the acute water quality standard for chloride.

50. Monitoring results reported by Consol demonstrate that from at least August 1, 2009 through September 19, 2009, significant amounts of chloride were discharged from the Velone Pond, causing in-stream levels to rise well above the acute water quality standard for chloride.

51. In-stream chloride levels at the levels observed during the May to November 2009 time period in the receiving streams for the Velone Pond and St. Leo discharges can lead to increased mortality in the resident aquatic life, resulting in an impaired water body.

52. Sampling conducted by EPA and WVDEP indicate that during at least September of 2009 high levels of total dissolved solids ("TDS") were present in the receiving waters for the Velone Pond and St. Leo discharges.

53. TDS discharges at the levels observed during the September 2009 time period in the receiving streams for the Velone Pond and St. Leo discharges can cause toxic effect in the resident aquatic life. Increased salinity due to total dissolved solids affects gills and other respiratory structures of fish, mussels, amphibian, and aquatic macro-invertebrates, and can also impact certain life states, such as the ova. As with chloride, increased TDS can lead to increased mortality in the resident aquatic life and to impairment of the stream.

54. WVDEP biological assessment data from September of 2009 demonstrates that the aquatic macro-invertebrate communities downstream of the Velone Pond and St. Leo discharges were severely impaired and damaged.

55. In addition, on or about September 2, 2009, and extending for several weeks thereafter, a massive and devastating fish, mussel, and salamander kill (the "fish kill") was reported in the Dunkard Creek watershed which transects both northern West Virginia and southern Pennsylvania. Investigations by EPA and WVDEP have determined that the fish kill was caused by toxins released from a species of golden algae (*Prymnesium parvum*) associated with and commonly thriving in brackish, briny water or water high in TDS. Chloride is a major component of the TDS in Dunkard Creek.

56. Chloride and TDS discharges from Consol's mines created and/or contributed to the creation of conditions favorable for the golden algae to thrive and bloom, which ultimately led to the fish kill.

57. Based on the above-alleged facts, Consol and Consolidation Coal Company violated NPDES Permit Nos. WV0064602 and WV0040711 by discharging elevated levels of chloride and TDS, which caused significant adverse impact to the chemical, physical, hydrologic, and/or biological components of the aquatic ecosystem.

### CLAIM 3 FOR RELIEF

58. Paragraphs 1-57 are re-alleged and incorporated by reference.

59. During the period relevant to this Complaint, Defendants have discharged pollutants from point sources in excess of effluent limitations for chloride into waters of the United States.

60. During the period relevant to this Complaint, Consol and Consolidation Coal

12

Company discharged pollutants in violation of the water quality standards incorporated into its NPDES permits into waters of the United States.

61. For each exceedance of the chloride effluent limitations and violation of the narrative water quality standards, Defendants are in violation of the terms of the applicable NPDES permit under Section 402 of the CWA.

62. Unless enjoined, Defendants' violations will continue.

63. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Defendants are liable for permanent injunctive relief.

64. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendants are liable for civil penalties of up to $32,500 per day of violation for all violations occurring between March 15, 2004 and January 12, 2009, and up to $37,500 per day of violation for all violations occurring after January 12, 2009.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully prays that this Court:

1. Permanently enjoin Defendants from discharging pollutants except as expressly authorized by the CWA and the limitations and conditions of NPDES permits held by Consol's Subsidiaries.

2. Order Defendants to take all necessary steps to comply with the CWA and the limitations and conditions of the applicable NPDES permits.

3. Assess civil penalties against Defendants up to $32,500 per day for each violation of the CWA or any applicable NPDES permit that occurred between March 15, 2004 and January 12, 2009, and up to $37,500 per day for each violation of the CWA or any applicable NPDES permit that

occurred after January 12, 2009.

4. Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

*/s/ Ignacia S. Moreno*
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s/ Britta G. Hinrichsen*
LAURA A. THOMS
BRITTA G. HINRICHSEN
Trial Attorneys
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044

14

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

_____
WILLIAM J. IHLENFELD, II
United States Attorney

_____
DANIEL W. DICKINSON, JR.
Assistant United States Attorney
U. S. Courthouse and Federal Building
1125 Chapline Street
Wheeling, WV 26003