IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and the STATE OF WEST VIRGINIA by and<br>through the WEST VIRGINIA DEPARTMENT OF<br>ENVIRONMENTAL PROTECTION,<br><br>Plaintiff- Intervenor,<br><br>v.<br><br>CONSOL ENERGY INC.; CONSOLIDATION COAL<br>COMPANY; and WINDSOR COAL COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO. 1:11-CV-28
~~XXXXXXXXXXXXX~~ (Judge Stamp)
CONSENT DECREE

### TABLE OF CONTENTS

I.       BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.      JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

III.     APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

V.       CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

VI.     COMPLIANCE REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

VII.    REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VIII.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

IX.     FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

X.       DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XI.     INFORMATION COLLECTION AND RETENTION . . . . . . . . . . . . . . . . 32

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS . . . . . . . . . . . . . . 34

XIII.   COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XIV.   NOTICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XV.    EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XVI.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XVII.   MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

XVIII. TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XIX.   PUBLIC PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

XX.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

XXI.    INTEGRATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

XXII.   FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

i

XXIII. **APPENDICES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **41**

## I. BACKGROUND

A.    Concurrent with the lodging of this Consent Decree, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint against Defendants CONSOL Energy Inc., Consolidation Coal Company, and Windsor Coal Company, and the State of West Virginia (the "State"), by and through the West Virginia Department of Environmental Protection ("WVDEP"), has moved to intervene in such action.

B.    The United States' Complaint alleges that Defendants are in violation of the Federal Water Pollution Control Act ("CWA" or the "Act"), 33 U.S.C. §§ 1311 and 1342, as amended, for discharging pollutants into waters of the United States in violation of Section 301 of the Act and for violating the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued pursuant to Section 402 of the Act.

C.    The State of West Virginia's Motion to Intervene is accompanied by a Complaint alleging that Defendants are in violation of the West Virginia Water Pollution Control Act ("WPCA"), W. Va. Code § 22-11-1, *et seq.*, for discharging pollutants into State waters in violation of NPDES permits. The State's Complaint also alleges violations of the West Virginia Surface Coal Mining and Reclamation Act ("SCMRA"), W. Va. Code § 22-3-1, *et seq.*

D.    In addition to the aforementioned Complaints, the State is also negotiating a separate settlement with the Defendants to resolve any claims by the State for natural resource damages pursuant to the WPCA, W. Va. Code § 22-11-25.

E.    As of the date of lodging, Defendants have taken measures towards implementation of the Compliance Requirements in Section VI of the Decree. In particular, Defendants have (i) submitted permit applications for construction of the Treatment Plant and pipeline collection system; (ii) maintained and operated real time continuous monitoring stations to manage particular

1

Monongahela Basin Discharges; and (iii) completed the preliminary engineering design for relocation of the Ohio River Discharges.

F.     Defendants do not admit any liability to the United States or the State arising out of the transactions or occurrences alleged in the respective Complaints, nor do the Defendants admit the factual allegations alleged in the respective Complaints.

G.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.   JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Parties and over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b).

2.     Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b), because it is the judicial district in which Defendants are located, reside, and/or are doing business, and/or in which the violations alleged in the Complaints occurred.

3.     For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and consent to venue in this judicial district.

4.     For purposes of this Decree, Defendants agree that the United States' Complaint states claims upon which relief may be granted pursuant to Sections 301 and 402 of the Act, 33 U.S.C. §§ 1311 and 1342, and the Complaint filed by the State of West Virginia states claims upon

2

which relief may be granted pursuant to West Virginia Code § 22-11-1, *et seq.*, and West Virginia Code § 22-3-1, *et seq.*

## III. **APPLICABILITY**

5.      The provisions of this Consent Decree apply to and are binding upon the United States and the State, and upon Defendants and any successors, assigns, or other entities, or persons otherwise bound by law.

6.      At least 30 Days prior to any transfer of ownership or operation of any facility with wastewater streams covered by this Decree, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to the United States and State, in accordance with Section XIV (Notices) of this Consent Decree.  No transfer of ownership or operation of any facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligation to ensure that the terms of the Decree are implemented, unless (a) the transferee agrees to undertake the obligations required by the Consent Decree and to be added as a Party under the Decree and thus bound as a Defendant by the terms thereof, (b) the United States and State consent to relieve the Defendants of their obligations, and (c) the transferee becomes a Party to this Consent Decree with respect to the transferred facility, pursuant to Section XVII (Modification).  Any attempt to transfer ownership or operation of the facility without complying with this Paragraph constitutes a violation of this Decree.

7.      Defendants shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to the lead contractor(s) selected to design and construct the Treatment Plant.  Defendants shall also ensure that any contractor(s) retained to perform work required under this Decree are made

3

specifically aware of the requirements of this Decree that fall within such contractors' duties. Defendants shall condition any contract to perform work required under this Decree upon performance of the work in conformity with the terms of this Consent Decree.

8.    In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.  DEFINITIONS

9.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.   "Chloride Limits" shall mean a maximum daily effluent limitation for chloride of 378 mg/l and/or a maximum monthly average effluent limitation for chloride of 218 mg/l.  The Chloride Limits shall apply to any Outlet to which a Monongahela Basin Discharge, or any portion thereof, is routed, including but not limited to: (i) Outlets identified in Paragraph 9(i) (definition for "Monongahela Basin Discharges"), and (ii) any Outlet with discharge from the Monongahela Basin Discharges Treatment System;

b.   "Complaints" shall mean the complaint filed by the United States and the complaint filed by the State as a Plaintiff-Intervenor in this action;

c.   "Compliance Deadline" shall mean the deadline for achieving compliance with the Chloride Limits, which shall be May 30, 2013;

d.   "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII);

4

e. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

f. "Defendants" shall mean the persons or entities named in the Complaints;

g. "Effective Date" shall have the definition provided in Section XV;

h. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

i. "Monongahela Basin Discharges" shall mean the wastewater streams which are permitted for discharge as of the date of lodging by: NPDES Permit No. WV0064602 (Blacksville No. 2 mine), Outlet 003 (Wana AMD Plant) and Outlet 005 (Velone pond), unless Defendants permanently eliminate the discharge of chloride in excess of the Chloride Limit from Outlet 005 by isolating the source of chloride in the Velone pond and routing any such wastewater stream to Outlet 003; NPDES Permit No. WV0040711 (Loveridge mine), Outlet 016 (St. Leo AMD Plant), Outlet 001 (Sugar Run AMD Plant), and Outlet 007 (Llewellyn AMD Plant); NPDES Permit No. WV0093505 (Robinson Run mine), Outlet 011 (Lowe AMD Plant); and NPDES Permit No. WV0050598 (Four States mine), Outlet 002 (Thorne AMD Plant);

j. "Monongahela Basin Discharges Treatment System" or "Treatment System" shall mean the system installed pursuant to Paragraphs 24-26 of this Consent Decree for treatment of the Monongahela Basin Discharges;

k. "NPDES" shall mean the National Pollutant Discharge Elimination System defined in 40 C.F.R. § 122.2 and any State-issued NPDES permit;

l. "Ohio River Discharges" shall mean the wastewater streams which are permitted for

5

discharge as of the date of lodging by: NPDES Permit No. WV0004201 (Shoemaker Mine), Outlet

003 (Dupont Hollow AMD Plant) and Outlet 018 (8 North AMD Plant); and NPDES Permit No.

WV1011456 (Windsor Mine), Outlet 001 (Huff Run AMD Plant);

    m. "Outlet" shall mean an NPDES permitted discharge point;

    n. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

    o. "Parties" shall mean the United States, the State of West Virginia, and Defendants;

    p. "Section" shall mean a portion of this Decree identified by a Roman numeral;

    q. "State" shall mean the State of West Virginia; and

    r. "United States" shall mean the United States of America, acting on behalf of EPA.

### V. **CIVIL PENALTY**

10. Within 30 Days after the Effective Date of this Consent Decree, Defendants shall pay

a total of $5,500,000 as a civil penalty to the United States and the State.

11. Fifty percent of the civil penalty under this Section shall be paid to the United States

and fifty percent of the civil penalty under this Section shall be paid to the State.

12. Defendants shall make payments to the United States under this Section by FedWire

Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written

instructions to be provided to Defendants, following entry of this Consent Decree, by the Financial

Litigation Unit of the U.S. Attorney's Office for the Northern District of West Virginia. At the time

of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction

record, together with a transmittal letter, which shall state that the payment is for the civil penalty

owed pursuant to this Consent Decree in *United States v. CONSOL Energy Inc., et al.*, and shall

reference the DOJ case number, 90-5-1-1-09916/1, to the United States in accordance with Section

XIV of this Decree (Notices); by email to acctsreceivable.CINWD@epa.gov; and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

13.     Defendants shall make payments to the State under this Section by certified or cashier's check to the WVDEP for deposit in the WVDEP's Water Quality Management Fund. Payments shall be mailed to:

> Michael Zeto, Chief Inspector
> Environmental Enforcement
> West Virginia Department of Environmental Protection
> 601 57th Street, SE, Charleston, WV 25304

14.     Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal or state or local income tax.

## VI.   COMPLIANCE REQUIREMENTS

### General Requirements

15.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with applicable federal, state, and local laws, regulations, and permits.

16.     At all times, Defendants shall operate the mining facilities associated with the Ohio River Discharges and the Monongahela Basin Discharges to maximize compliance with applicable NPDES permits.

17.     Defendants shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits. This Consent Decree should not be considered to be a permit issued pursuant to any federal, state, or local statute or regulation.

18.     Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted and approved pursuant to this Consent Decree, EPA, after consultation with

7

the State, shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

19.     If the submission is approved pursuant to Paragraph 18(a), Defendants shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part, pursuant to Paragraph 18(b) or 18(c), Defendants shall, upon written direction from EPA, after consultation with the State, take all actions required by the approved plan, report, or other item that EPA, after consultation with the State, determines are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions under Section X of this Decree (Dispute Resolution).

20.     If the submission is disapproved in whole or in part pursuant to Paragraph 18(c) or (d), Defendants shall, within 45 Days of receipt of disapproval or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with the preceding Paragraph.

21.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is materially disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

8

22.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require Defendants to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendants' right to invoke Dispute Resolution under Section X and the right of EPA to seek stipulated penalties as provided in the preceding Paragraph.

23.    Permits.  Where any compliance obligation under this Section requires Defendants to obtain a federal, state, or local permit or approval, Defendants shall submit timely and substantially complete applications and take all other actions necessary to obtain all such permits or approvals. Defendants may seek relief under the provisions of Section IX of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendants have submitted timely and substantially complete applications and have taken all other actions necessary to obtain all such permits or approvals.

**Monongahela Basin Discharges Treatment System**

24.    Defendants shall design, construct, and operate a wastewater treatment plant, landfill, and pipeline collection system (collectively, the "Monongahela Basin Discharges Treatment System" or "Treatment System") for treatment of the Monongahela Basin Discharges.  The Treatment System shall be designed and constructed to achieve compliance with the Chloride Limits by the Compliance Deadline.

a.    The wastewater treatment plant (the "Treatment Plant") shall meet the design specifications in Appendix A, including, but not limited to, the capacity to treat an incoming flow of 3500 gallons per minute using pretreatment, reverse osmosis, and evaporation and/or crystallization processes.  Any deviation from the specifications as provided for in paragraph 8 of Appendix A shall

9

be proposed by Defendants by February 10, 2011.

b.  The landfill shall be designed in accordance with 33 C.S.R. 1 as an industrial solid waste disposal facility and shall have (i) a design life of at least ten years of operation; (ii) a precipitation control system to prevent flow on and off the disposal area; (iii) sediment control structures to control sedimentation; and (iv) a liner system with a subbase, leachate detection zone, composite liner, leachate collection system, leachate treatment system, and a reinforcement layer, unless otherwise approved by EPA, after consultation with the State.

c.  The pipeline collection system shall be designed to transport the Monongahela Basin Discharges to the Treatment Plant. Defendants shall treat the Monongahela Basin Discharges using current and/or upgraded conventional acid mine drainage treatment technology prior to such discharges entering the pipeline collection system.

25.  To ensure timely implementation of the Treatment System, Defendants shall complete the following tasks by the specified dates:

a.  Permitting: Defendants shall submit complete applications for all necessary permitting for the Treatment System as soon as possible, including the following specific milestones:

(i)  Applications for permits necessary for the construction and operation of the landfill shall be submitted no later than February 1, 2011.

(ii)  Applications to modify the existing NPDES permit for discharges from the Treatment Plant site shall be submitted no later than June 13, 2011.

b.  Selection of Contractor and Execution of Contract: On or before March 18, 2011, Defendants shall select the contractor(s) for construction of the Treatment Plant. Prior to selecting the contractor(s), Defendants shall solicit preliminary engineering analysis reports from

qualified bidders, including a 30% to 50% complete design.  On or before April 15, 2011, Defendants shall execute a contract for construction of the Treatment Plant.

      c.    <u>Pipeline Collection System</u>: Tasks related to the pipeline construction that do not require a preliminary engineering stage, such as property and right-of-way acquisition, shall be initiated as soon as possible and completed by no later than August 2, 2011.  Construction of the pipeline collection system shall be completed by January 21, 2013.

      d.    <u>Final Design and Treatment Plant Construction</u>: Defendants shall complete the final design of the Treatment Plant on or before August 5, 2011, shall initiate the construction of the Treatment Plant on or before July 11, 2011, and shall achieve mechanical completion of construction of the Treatment Plant on or before January 21, 2013.  For purposes of this Subparagraph, "mechanical completion" shall mean that the Treatment Plant has been constructed and the equipment has been installed such that the plant is ready to begin commissioning.

      e.    <u>Treatment Plant Commissioning and Training</u>: On or before May 13, 2013, Defendants shall (i) complete the commissioning stage of the plant construction during which equipment shall be tested and adjusted as necessary to ensure that the treated discharge consistently meets the Chloride Limits, and (ii) complete training of Treatment Plant operators in proper operation of the plant to ensure that the treated discharge consistently meets the Chloride Limits.

      f.    <u>Treatment System Operation</u>: On or before May 30, 2013, Defendants shall commence operation of the Treatment System and achieve compliance with the Chloride Limits.

    26.    Defendants shall continue to operate the Treatment System to treat the Monongahela Basin Discharges throughout the term of this Decree.

    27.    Defendants shall implement the following monitoring and sampling program for the Treatment Plant:

11

       a.     For 90 Days after commencing operation of the Treatment System pursuant to Paragraph 25(f), the Defendants shall monitor specific conductance at the following process locations: (i) plant feed water, (ii) reverse osmosis permeate water, (iii) water after the evaporator/crystallizer, (iv) the blended reverse osmosis permeate and evaporator/crystallizer water (product water), and (v) the product water after re-mineralization prior to discharge; and

       b.     For 30 Days after commencing operation of the Treatment System pursuant to Paragraph 25(f), the Defendants shall collect daily samples of each of the above water sources for laboratory analysis for specific conductance, total dissolved solids (TDS), and chlorides to establish a specific conductance/chloride relationship and a specific conductance/TDS relationship to use for estimating chloride and TDS concentrations at each of the monitoring points.

       c.     Any data collected under this Paragraph shall be reported every two weeks by email to EPA and the State.

28.     Within 180 Days after commencing operation of the Treatment System pursuant to Paragraph 25(f), Defendants shall submit to the United States and the State a Monongahela Basin Discharges Treatment System Evaluation Report ("Treatment System Evaluation Report").

       a.     The Treatment System Evaluation Report shall include: (i) a summary of compliance with NPDES permits limits for the Monongahela Basin Discharges and any Outlet of any NPDES permit with discharge from the Treatment System; (ii) an evaluation of the Treatment Plant's effectiveness in removing chloride and dissolved solids; (iii) an evaluation of the Treatment Plant's impact on specific conductance; and (iv) any proposed changes to improve the performance of the Treatment System, along with a schedule for implementation of the changes.

       b.     Following receipt of the Treatment System Evaluation Report, the United States, after consultation with the State, may approve, approve with specified conditions, approve in

12

part, or disapprove (with explanation) the Report, including any plan for implementation of improvements to the Treatment System, pursuant to Paragraphs 18-22, taking into account the Treatment System Evaluation Report and any other relevant information.

        c.    If the United States approves a plan under Paragraph 28(b), then implementation of the improvements to the Treatment System shall be completed in the manner, and in accordance with, the schedule established in the United States' approval.

### Interim Treatment Measures for the Monongahela Basin Discharges

29.    <u>Blacksville No. 2</u>: NPDES Permit No. WV0064602, Outlet 003

        a.    The provisions of this Paragraph apply to NPDES Permit No. WV0064602, Outlet 003. All provisions of this Paragraph shall also apply to NPDES Permit No. WV0064602, Outlet 005, unless Outlet 005 does not constitute a Monongahela Basin Discharge pursuant to Paragraph 9(i).

        b.    From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall not exceed the following interim instream levels:

| Stream Flow (GPM) | Applicable Interim Instream Level | |
|---|---|---|
| | Chloride (mg/L) | Specific Conductance (µS/cm) |
| 500 – 1500 | 230 | 2,100 |
| >1500 | 860 | 5,400 |

The point of compliance for interim instream levels shall be located at the Blacksville No. 2 Compliance Point identified on Appendix B1. Defendants shall monitor stream flow pursuant to this Paragraph at the Blacksville 2 Upstream Monitoring Station.

        c.    If, at any time, the stream flow is less than 500 gpm at the Blacksville 2 Upstream Monitoring Station, Defendants shall immediately cease discharges from Blacksville No.

2, NPDES Permit No. WV0064602, Outlet 003.  Once stream flow is equal to or greater than 500 gpm at the Blacksville 2 Upstream Monitoring Station, Defendants may resume discharging from Blacksville No. 2, NPDES Permit No. WV0064602, Outlet 003, in accordance with this Paragraph. Defendants shall provide immediate email notification to EPA and the State at the time of ceasing or resuming discharges under this Paragraph.

       d.    From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring upstream and downstream of NPDES Permit No. WV0064602, Outlet 003 to measure chloride, specific conductance, and flow upstream, and chloride, specific conductance, and temperature downstream.

       e.    From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain a managed discharge system that controls the discharges from NPDES Permit No. WV0064602, Outlet 003, based on real time continuous instream monitoring data, in order to prevent exceedances of the interim instream levels under this Paragraph.

    30.    <u>Loveridge, St. Leo</u>: NPDES Permit No. WV0040711, Outlet 016

       a.    From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall not exceed the following interim instream levels:

| Stream Flow (GPM) | Applicable Interim Instream Level | |
|---|---|---|
| | Chloride (mg/L) | Specific Conductance ($\mu$S/cm) |
| 500 – 1500 | 230 | 2,100 |
| >1500 | 860 | 5,400 |

The point of compliance for interim instream levels shall be at the St. Leo Compliance Point

14

identified on Appendix B2. Defendants shall monitor stream flow pursuant to this Paragraph at the Blacksville 2 Upstream Monitoring Station.

      b.     If, at any time, the stream flow is less than 500 gpm at the Blacksville 2 Upstream Monitoring Station, Defendants shall immediately cease discharges from Loveridge, St. Leo, NPDES Permit No. WV0040711, Outlet 016. Once stream flow is equal to or greater than 500 gpm at the Blacksville 2 Upstream Monitoring Station, Defendants may resume discharging from Loveridge, St. Leo, NPDES Permit No. WV0040711, Outlet 016, in accordance with this Paragraph. Defendants shall provide immediate email notification to EPA and the State at the time of ceasing or resuming discharges under this Paragraph.

      c.     From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring upstream and downstream of NPDES Permit No. WV0040711, Outlet 016 to measure chloride, specific conductance, and flow upstream, and chloride, specific conductance, and temperature downstream.

      d.     From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain a managed discharge system that controls the discharges from NPDES Permit No. WV0040711, Outlet 016, based on instream monitoring data, in order to prevent exceedances of the interim instream levels under this Paragraph. The managed discharge system under this Subparagraph may combine temporary underground storage of mine water as well as transfer of mine water to the Harvey Run impoundment operated by Defendants at the Loveridge mine.

     31.    <u>Loveridge, Sugar Run</u>: NPDES Permit No. WV0040711, Outlet 001

      a.     From the date of lodging until the Treatment System commences operation

pursuant to Paragraph 25(f), Defendants shall not exceed the interim instream chloride level of 400 mg/l at the point of compliance for the Loveridge, Sugar Run AMD, NPDES Permit No. WV0040711, Outlet 001.

b.   From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring at the point of compliance to measure chloride, specific conductance, and temperature.  The monitoring system shall be used to manage the rate of the discharge and shall have the capacity to cease discharge to prevent an exceedance of the interim instream level under this Paragraph.

c.   For purposes of this Paragraph, the point of compliance for NPDES Permit No. WV0040711, Outlet 001 shall be at the Sugar Run Compliance Point identified on Appendix B3.

32.   <u>Loveridge, Llewellyn</u>: NPDES Permit No. WV0040711, Outlet 007

a.   From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall not exceed the following interim instream levels at the point of compliance for the Loveridge, Llewellyn AMD, NPDES Permit No. WV0040711, Outlet 007, during the applicable time periods:

(i)   From August 1 to September 30, the interim instream level for chloride shall be 230 mg/L; and

(ii)   From October 1 to July 31, the interim instream level for chloride shall be 500 mg/L.

b.   From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring at the point of compliance to measure chloride, specific conductance, and temperature.  The monitoring

16

system shall be used to manage the rate of the discharge and shall have the capacity to cease the discharge to prevent an exceedance of the interim instream levels under this Paragraph.

        c.      For purposes of this Paragraph, the point of compliance for NPDES Permit No. WV0040711, Outlet 007 shall be at the Llewellyn Compliance Point identified on Appendix B4.

       33.    <u>Four States, Thorne</u>: NPDES Permit No. WV0050598, Outlet 002

        a.     From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall not exceed the following interim instream levels at the point of compliance for the Four States, Thorne AMD, NPDES Permit No. WV0050598, Outlet 002 during the applicable time period:

           (i)     From August 1 to September 30, the interim instream level for chloride shall not exceed 230 mg/L; and

           (ii)    From October 1 to July 31, the interim instream level for chloride shall not exceed 300 mg/L.

        b.     From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring at the point of compliance to measure chloride, specific conductance, and temperature. The monitoring system shall be used to manage the rate of discharge and shall have the capacity to cease the discharge to prevent an exceedance of the interim limits under this Paragraph.

        c.     For purposes of this Paragraph, the point of compliance for NPDES Permit No. WV0050598, Outlet 002 shall be at the Thorne Compliance Point identified at Appendix B5.

       34.    <u>Robinson Run, Lowe</u>: NPDES Permit No. WV0093505, Outlet 011

        a.     From the date of lodging until the Treatment System commences operation

pursuant to Paragraph 25(f), Defendants shall not exceed an interim instream chloride level of 300 mg/l at the point of compliance for the Robinson Run, Lowe AMD, NPDES Permit No. WV0093505, Outlet 011.

b.      From the date of lodging until the Treatment System commences operation pursuant to Paragraph 25(f), Defendants shall maintain real time continuous instream monitoring at the point of compliance to measure chloride, specific conductance, and temperature. The monitoring system shall be used to manage the rate of discharge and shall have the capacity to cease the discharge to prevent an exceedance of the interim limit under this Paragraph.

c.      For purposes of this Paragraph, the point of compliance for NPDES Permit No. WV0093505, Outlet 011 shall be at the Lowe Compliance Point identified on Appendix B6.

d.      Defendants shall also conduct field measurements of chloride, specific conductance, and temperature once per week at the Lowe Field Measurement location identified on Appendix B6.

35.    Points of Compliance.   The location of the points of compliance and field measurements set forth under Paragraphs 29-34, and as identified on the maps in Appendix B, may be modified upon written agreement of the Parties.

36.    Managed Discharge Systems.   The managed discharge systems covered by Paragraphs 29-34 may be operated based on specific conductance/chloride concentration relationships that are established based on at least 30 days of instream monitoring information and approved by EPA and the State, provided that Defendants shall continue to be responsible to conduct chloride instream monitoring, except for periods when chloride probes are being tested, recalibrated, and/or replaced.

37.    Defendants shall monitor for golden algae (*Prymnesium parvum*) in Dunkard Creek

18

and its tributaries once a week from April 1 to November 30 and once every two weeks from December 1 to March 31 unless golden algae is detected in any sample, at which time the frequency shall increase to twice a week, until the golden algae counts return to zero. This monitoring shall occur at the sixteen sites approved by WVDEP pursuant to West Virginia Order No.: M-10-071 issued on April 23, 2010 and shall continue such monitoring until the Compliance Deadline. Results of the monitoring shall be provided to Defendants within five days of taking the sample, and reported by email immediately upon receipt to EPA and the State.

38.    Results of monitoring required by Paragraphs 29-34 shall be reported by email to EPA and the State on a monthly basis.

**Ohio River Discharges Compliance**

39.    Defendants shall eliminate the discharges from the Shoemaker Mine, NPDES Permit No. WV0004201, Outlets 003 and 018, and the Windsor Mine, NPDES Permit No. WV1011456, Outlet 001 in their current locations and relocate them into the Ohio River at locations where the discharges, taking into account any approved mixing zone, will not cause exceedances of final effluent limits for chloride in the applicable NPDES permits for the relocated discharges.

40.    Defendants shall complete the following tasks related to the relocation of the Ohio River Discharges by the specified dates:

    a.    Permit Modification:

        (i)    On or before January 14, 2011, Defendants shall submit the complete permit modification application to WVDEP requesting the relocation of the discharges from NPDES Permit No. WV0004201, Outlets 003 and 018, together with a mixing zone application for chloride, as well as any necessary applications to the U.S. Army Corps of Engineers, and West Virginia Division of Natural Resources, Office of Land and Streams. Defendants shall send to EPA a copy of

19

these permit applications on the same date.

      (ii)    On or before January 31, 2011, Defendants shall submit the complete permit modification application to WVDEP requesting the relocation of the discharge from NPDES Permit No. WV1011456, Outlet 001, together with a mixing zone for chloride, as well as any necessary permit applications to the U.S. Army Corps of Engineers, and West Virginia Division of Natural Resources, Office of Land and Streams.  Defendants shall send to EPA a copy of these permit applications on the same date.

      b.    <u>Final Engineering Designs</u>:

      (i)    On or before March 15, 2011, Defendants shall complete the final design for the relocation of the discharges from NPDES Permit No. WV0004201, Outlets 003 and 018.

      (ii)    On or before April 15, 2011, Defendants shall complete the final design for the relocation of the discharge from NPDES Permit No. WV1011456, Outlet 001.

      c.    <u>Selection of Contractor</u>:

      (i)    On or before May 2, 2011, Defendants shall execute any necessary contracts for the construction of the infrastructure required for the relocation of the discharges from NPDES Permit No. WV0004201, Outlets 003 and 018.

      (ii)    On or before May 31, 2011, Defendants shall execute any necessary contracts for the construction of the infrastructure required for the relocation of the discharge from NPDES Permit No. WV1011456, Outlet 001.

      d.    <u>Completion of construction and relocation of the discharges</u>:

      (i)    On or before September 30, 2011, Defendants shall complete the relocation of the discharges from NPDES Permit No. WV0004201, Outlets 003 and 018 to the Ohio

20

River.

(ii)   On or before October 31, 2011, Defendants shall complete the relocation of the discharge from NPDES Permit No. WV1011456, Outlet 001 to the Ohio River.

41.   Defendants shall achieve compliance with the final effluent limits for chloride in the applicable NPDES permits at the relocated Outlets for the Ohio River Discharges no later than October 31, 2011.

## VII.   REPORTING REQUIREMENTS

42.   Defendants shall submit to EPA and the State quarterly reports at the end of the month following the end of each calendar-year quarter (*i.e.*, by April 30, July 31, October 31, and January 31). The quarterly reports shall contain, at a minimum, the following:

a.   A discussion on progress since the last quarterly report on the implementation of the Treatment System, the Monongahela Basin Discharges Interim Measures, and the Ohio River Discharges relocation measures;

b.   Information on completed or missed Consent Decree deadlines, the reasons for any missed deadlines, and any anticipated problems meeting any deadlines in the following quarter;

c.   Summary of information relating to each exceedance of the interim effluent levels set by Paragraphs 29-34 or the Chloride Limits, as applicable, including (i) NPDES permit number and Outlet, (ii) date, (iii) monitoring data, (iv) applicable stipulated penalties, and (v) steps taken or planned steps to remedy the exceedance;

d.   Summary of information relating to each exceedance of effluent limits for the applicable permits for the Ohio River Discharges, including (i) NPDES permit number and Outlet, (ii) date, (iii) applicable stipulated penalties, and (iv) steps taken or planned steps to remedy the

21

exceedance.

    e.  A description of any noncompliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation; and

    f.  A description of each Decree violation for which Defendants have submitted to EPA an unresolved Force Majeure claim or intend to submit a Force Majeure claim pursuant to Section IX of this Consent Decree.

   43.  If Defendants violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Defendants shall notify the United States and the State of such violation and its likely duration, in writing, within 7 Days of the day Defendants first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report.  Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day Defendants become aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX of this Consent Decree (Force Majeure).

   44.  Whenever any violation of this Consent Decree or of any applicable permit or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendants first knew of the violation or event.  This procedure is in addition to the requirements set

forth in the preceding Paragraph.

45.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices), unless otherwise specified herein.

46.     Each report submitted by Defendants under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

47.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligation required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

48.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

49.     Defendants shall be liable for stipulated penalties to the United States and the State for violations as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work

plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

50.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

51.     Either Plaintiff may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

52.     Stipulated penalties shall continue to accrue as provided in Paragraph 50 during any Dispute Resolution under Section X, but need not be paid until the following:

        a.      If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

        b.      If the dispute is appealed to the Court and the United States or the State prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, to the United States and the State within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

        c.      If any Party appeals the Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

53.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961,

24

accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

54.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendants' violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendants shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

55.     The Defendant shall pay fifty percent of the total stipulated penalty amount due to the United States and fifty percent to the State.

56.     <u>Non-compliance with Consent Decree Requirements</u>: The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of this Consent Decree, except as otherwise provided in Paragraphs 57 and 60-62:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 per Day or portion thereof | 1st through 14th Day |
| $2,500 per Day or portion thereof | 15th through 30th Day |
| $4,500 per Day or portion thereof | 31st Day and beyond |

57.     <u>Non-Compliance with Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the Reporting Requirements under Section VII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1,250 per Day or portion thereof | 31st Day and beyond |

58.     Defendants shall pay any stipulated penalty pursuant to Paragraphs 56 and 57 to the United States and the State within 30 Days of receiving a written demand by either Plaintiff. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other.

59.     Defendants shall pay stipulated penalties owing to the United States pursuant to Paragraphs 56 and 57 in the manner set forth in Paragraph 12 and with the confirmation notices and transmittal letter information required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendants shall pay stipulated penalties owing to the State pursuant to Paragraphs 56 and 57 in the manner set forth in Paragraph 13 and with the confirmation notice required by Paragraph 13, except that the notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

60.     <u>Non-Compliance with Interim Levels</u>.  Stipulated penalties shall accrue in the amount of $1,000 for each daily exceedance of an interim level set forth in Paragraphs 29(b), 30(a), 31(a), 32(a), 33(a), and 34(a) from the date of lodging to the Compliance Deadline. For the purposes of this Paragraph, multiple exceedances of an interim instream level for the same parameter at the same point of compliance during one Day shall count as one daily exceedance.

61.     <u>Non-Compliance with Chloride Limits</u>.  The following stipulated penalties shall accrue for each violation of a Chloride Limit after the Compliance Deadline:

a.     For violations of the daily maximum Chloride Limit:

| Number of daily maximum violations at an Outlet | Stipulated Penalties |
| --- | --- |
| First violation | $1,000 |
| Second consecutive violation | $2,500 |
| Third consecutive violation | $5,000 |

26

Fourth consecutive violation and                    $10,000
each consecutive violation thereafter

     b.    For violations of the monthly average Chloride Limit:

| Number of monthly average violations at an Outlet | Stipulated Penalties |
|---|---|
| First violation | $2,000 |
| Second consecutive violation | $5,000 |
| Third consecutive violation | $10,000 |
| Fourth consecutive violation and each consecutive violation thereafter | $20,000 |

    62.    <u>Non-Compliance with final effluent limits for chloride (Ohio River Discharges)</u>. The following stipulated penalties shall accrue for each violation of a final effluent limit for chloride in the applicable NPDES permits at the relocated Outlets for the Ohio River Discharges after October 31, 2011:

     a.    For violations of a daily maximum chloride effluent limit:

| Number of daily maximum violations at an Outlet | Stipulated Penalties |
|---|---|
| First violation | $1,000 |
| Second consecutive violation | $2,500 |
| Third consecutive violation | $5,000 |
| Fourth consecutive violation and each consecutive violation thereafter | $10,000 |

     b.    For violations of a monthly average chloride effluent limit:

| Number of monthly average violations at an Outlet | Stipulated Penalties |
|---|---|
| First violation | $2,000 |
| Second consecutive violation | $5,000 |
| Third consecutive violation | $10,000 |
| Fourth consecutive violation and each consecutive violation thereafter | $20,000 |

    63.    Defendants shall pay any stipulated penalties due as a result of non-compliances under Paragraphs 60-62 at the end of each quarter (i.e., by April 30, July 31, October 31, and January 31). Defendants shall make payments to the United States by FedWire Electronic Funds Transfer following the procedure specified in Paragraph 12, and notice of such payment shall be sent

to EPA with Defendants' quarterly reports required by Paragraph 42. Defendants shall make payments to the State following the procedure specified in Paragraph 13, and notice of such payment shall be sent to the State with Defendants' quarterly reports required by Paragraph 42.

## IX. FORCE MAJEURE

64. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

65. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendants shall provide notice orally or by electronic or facsimile transmission to EPA and the State within 72 hours of when Defendants first knew that the event might cause a delay. Within 7 Days thereafter, Defendants shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare or

28

the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

66.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

67.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendants in writing of its decision.

68.     If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants

29

complied with the requirements of Paragraphs 64 and 65, above. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

69.    Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section shall preclude Defendants from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of Defendants arising under this Decree.

70.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States and the State a written Notice of Dispute. The Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

71.    Formal Dispute Resolution. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

30

72.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendants' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, and shall be developed in consultation with the State. The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with Paragraph 74.

73.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

74.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to Paragraph 72. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

75.     The United States and/or the State shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

76.     Standard of Review

a.     Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 71 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items

31

requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendants shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

           b.      Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 71, Defendants shall bear the burden of demonstrating that its position fulfills the terms, conditions, requirements, and objectives of this Consent Decree.

        77.     The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 52. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.  INFORMATION COLLECTION AND RETENTION

        78.     The United States, the State, and their representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any property related to this Consent Decree and under the ownership or control of the Defendants, at all reasonable times, upon presentation of credentials, to:

           a.      monitor the progress of activities required under this Consent Decree;

           b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendants or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendants' compliance with this Consent Decree.

79.     Upon request, Defendants shall provide EPA and the State or their authorized representatives splits of any samples taken by Defendants. Upon request, EPA and the State shall provide Defendants splits of any samples taken by EPA or the State.

80.     Until five years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendants shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

81.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendants shall deliver any such documents, records, or other information to EPA or the State. Defendants may assert that certain documents, records, or other information is privileged under the attorney-client privilege or

33

any other privilege recognized by federal law. If Defendants assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendants. However, no data created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

82.     Defendants may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2.

83.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

84.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaints filed in this action.

85.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 84. Except as expressly specified in Paragraph 84, this Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing

34

regulations, or under other federal or state laws, regulations, or permit conditions, including, but not limited to, any claims for natural resource damages.

86.    In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the Defendants' violations, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 84 of this Section.

87.    This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree shall result in compliance with provisions of the Act, 33 U.S.C. § 1311, *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits. Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of Defendants shall not be cause for extension of any required compliance date in this Consent Decree.

88.    This Consent Decree does not limit or affect the rights of Defendants or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the

35

rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law.

89.   This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

90.   By the execution of this Consent Decree, Defendants release and shall hold harmless the United States and the State, their instrumentalities, agents, and employees, in their official and personal capacities, of any and all liability or claims arising out of or otherwise related to the negotiations leading to this Consent Decree and all matters contained therein.

## XIII.   COSTS

91.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants.

## XIV.   NOTICES

92.   Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-09916/1

36

To EPA:

Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103
Phone: 215-814-2300
Fax: 218-814-2318

To the State:

Chief Inspector, Environmental Enforcement
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304
Phone: 304-926-0470
Fax: 304-926-0488

Director, Division of Mining and Reclamation
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304
Phone: 304-926-0490
Fax: 304-926-0456

Chief, Office of Legal Services
West Virginia Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304
Phone: 304-926-0460
Fax: 304-926-0461

To Defendants:

General Manager Environmental Services
Consol Energy Inc.
1000 Consol Energy Drive
Canonsburg, PA 15317

Legal Department
Consol Energy Inc.
1000 Consol Energy Drive
Canonsburg, PA 15317

93.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree by email, they shall be made to EPA through Chad Harsh at harsh.chad@epamail.epa.gov; and to the State through Mike Zeto at Michael.A.Zeto@wv.gov, Tom Clarke at Thomas.L.Clarke@wv.gov, and Brent Wiles at Loren.B.Wiles@wv.gov.

94.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address.

95.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  EFFECTIVE DATE

96.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.  RETENTION OF JURISDICTION

97.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) or XVII (Modification) or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

98.     The terms of this Consent Decree, including any attached appendices, may be

38

modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

99.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 76, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

100.    After Defendants have completed the requirements of Section VI (Compliance Requirements), have thereafter maintained continuous satisfactory compliance with this Consent Decree for a period of two years, have complied with all other requirements of this Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States and the State a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

101.    Following receipt by the United States and the State of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

102.    If the United States, after consultation with the State, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X of this Decree.

39

However, Defendants shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 71 of Section X, until 60 Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

103.   This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7 and W. Va. Code R. § 47-10-16.2.c. The United States and the State reserve the right to withdraw or withhold their consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.   SIGNATORIES/SERVICE

104.   Each undersigned representative of the Defendants, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the undersigned representative of the State certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

105.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

106.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.   Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXII.  FINAL JUDGMENT

107.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII.  APPENDICES

108.    The following appendices are attached to and part of this Consent Decree:

Appendix A: Monongahela Basin Discharges Wastewater Treatment Plant Design Specifications

Appendix B: Points of Compliance and Field Measurements for Monongahela Basin Discharge Interim Measures

SO ORDERED THIS 17TH DAY OF  JUNE   , 2011.

/s/  Frederick P. Stamp, Jr.
United States District Judge
Northern District of West Virginia

41

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al.*
*v. CONSOL Energy Inc., et. al.*

FOR THE UNITED STATES OF AMERICA

Date: 2/25/11

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Date: 3/8/11

LAURA A. THOMS
BRITTA G. HINRICHSEN
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044

42

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et. al.*

FOR THE UNITED STATES OF AMERICA

Date: _____

WILLIAM J. IHLENFELD, II
United States Attorney

Date: _____

DANIEL W. DICKINSON, JR.
Assistant United States Attorney
U. S. Courthouse and Federal Building
1125 Chapline Street
Wheeling, WV 26003

43

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et. al.*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 2/25/11

CYNTHIA GILES, Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 2/22/11

ADAM M. KUSHNER, Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 2/22/11

MARK POLLINS, Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 2/22/11

AMANDA J. HELWIG, Attorney
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

44

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et. al.*

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

Date: 2/15/11

SHAWN M. GARVIN
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029
215-814-2900
215-814-2901 (fax)

Date: 2/15/11

MARCIA E. MULKEY
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029
215-814-2676
215-814-2603 (fax)

45

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et. al.*

FOR THE WEST VIRGINIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION

Date: ___1/ 28/ 11___

JENNIFER L. HUGHES
Senior Counsel
Office of Legal Services
WV Department of Environmental Protection
601 57th Street, SE
Charleston, WV 25304

46

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. CONSOL Energy Inc., et. al.*

FOR DEFENDANTS CONSOL Energy Inc.; Consolidation Coal Company; and Windsor Coal Company;

FOR CONSOL ENERGY INC.

Date: 2/4/11

Robert P. King, Executive Vice President

FOR CONSOLIDATION COAL COMPANY

Date: 2/4/11

Robert P. King, Vice President

FOR WINDSOR COAL COMPANY

Date: 2/4/11

Robert P. King, Vice President

47